David Koen
OSB No. 080941
david.koen@lasoregon.org
LEGAL AID SERVICES OF OREGON
921 SW Washington, Ste. 500
Portland, OR 97205
Telephone: 503.224.4086
Facsimile: 503.295.9496

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **NATACHE D. RINEGARD-GUIRMA**, **PLAINTIFF** | Case No. 3:10-cv-01065-PK |
| v. | THIRD AMENDED COMPLAINT – Oregon Trust Deed Act; Truth in Lending Act; Fair Debt Collection Practices Act |
| **BANK OF AMERICA, NATIONAL ASSOCIATION** as Successor by Merger to LaSalle Bank National Association, as Trustee under the Pooling and Servicing Agreement Dated as of August 1, 2006, GSAMP Trust 2006-HE5; **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**; **LITTON LOAN SERVICING LP**; **LSI TITLE COMPANY OF OREGON LLC**; and **QUALITY LOAN SERVICING CORPORATION OF WASHINGTON**, **DEFENDANTS** | |

Page 1 - Third Amended Complaint

## INTRODUCTION

1.      This case arises from a predatory subprime adjustable-rate loan given to plaintiff,

Natache D. Rinegard-Guirma, and the subsequent unlawful machinations of Defendants in their

quest to sell her home in a foreclosure sale by bypassing Oregon's Trust Deed Act, ORS 86.705,

*et seq.*  Using an entity created by the lending industry known as Mortgage Electronic

Registration Systems, Inc. ("MERS"), and in blatant contravention of Oregon law, Defendants

participated in a number of unauthorized transfers of rights under her loan that, they purport,

enable them to sell Ms. Rinegard-Guirma's home out from under her.  Ms. Rinegard-Guirma, a

low-income African-American single mother, brings this case to prevent Defendants from taking

her home without strictly complying with the statutory provisions that protect homeowners

facing the extraordinary remedy of foreclosure outside the judicial process.

2.      Ms. Rinegard-Guirma also brings this action to recover actual and statutory

damages, as applicable, for violations by defendants under the Truth in Lending Act ("TILA"),

15 U.S.C. § 1601, *et seq*., and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§

1692-1692p.

3.      Despite having no beneficial interest in the loan or any other authority to assign

the note or deed of trust executed by Ms. Rinegard-Guirma, Defendants MERS and Litton Loan

Servicing, LP ("Litton"), purported to effect such a transfer of the loan to LaSalle Bank, National

Association, as Trustee under the Pooling and Servicing Agreement Dated as of August 1, 2006,

GSAMP Trust 2006-HE5, a securitized trust ("LaSalle Bank as Trustee for the securitized

Page 2 - Third Amended Complaint

trust").[1]  Also without authority, LaSalle Bank as Trustee for the securitized trust purported to

appoint the successor trustee that now seeks to foreclose the deed of trust.

    4.     Ms. Rinegard-Guirma seeks to permanently enjoin defendants from foreclosing

until they comply with the same rule of law governing all entities that seek to foreclose deeds of

trust non-judicially, not the authority they have created for their own benefit.

## JURISDICTION AND VENUE

    5.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 in that

this matter arises under the Truth in Lending Act, 15 U.S.C. § 1601, *et seq*., and the Fair Debt

Collection Practices Act, 15 U.S.C. §§ 1692-1692p.

    6.     This Court has supplemental jurisdiction over the state law claims pursuant to 28

U.S.C. § 1367 because these claims are so related to the federal claims that they form part of the

same case or controversy.  Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and

2202.

    7.     Venue is proper in the District of Oregon, Portland Division, pursuant to 28

U.S.C. § 1391(b).

## PARTIES

    8.     Natache D. Rinegard-Guirma is an individual who is, and at all times relevant to

this action has been, a citizen of Multnomah County, Oregon.

    9.     Bank of America, National Association ("Bank of America'), is a federally

---

[1] Bank of America as Successor by Merger to LaSalle Bank as Trustee for the securitized trust has represented that it became LaSalle Bank's successor as trustee by virtue of Bank of America's merger with LaSalle Bank.

chartered banking corporation authorized to do business in Oregon.  Bank of America's principal

place of business is 100 North Tryon Street, Charlotte, NC  28255.

10.     Bank of America, as Successor by Merger to LaSalle Bank as Trustee for the

securitized trust purports to be the beneficial owner of the loan.

11.     Mortgage Electronic Registration Systems ("MERS") is a Delaware corporation

authorized to do business in Oregon.  MERS' principal place of business is 1818 Library Street,

Suite 300, Reston, VA 20190.  MERS is a nonstock corporation, owned by its members, who, in

most cases, are mortgage lenders.

12.     MERS purports to be the original beneficiary of the deed of trust for Ms.

Rinegard-Guirma's property.  The deed of trust for Ms. Rinegard-Guirma's property limits

MERS to "acting solely as a nominee for Lender and Lender's successors and assigns."  (p. 2 of

15 at ¶ (E)).

13.     MERS purports to have assigned the note and deed of trust for Ms. Rinegard-

Guirma's property to LaSalle Bank as Trustee for the securitized trust.

14.     Litton Loan Servicing, LP ("Litton"), is a Delaware limited partnership authorized

to do business in Oregon.  Litton's principal place of business is 4828 Loop Central Drive,

Houston, TX  77081.

15.     Litton is the servicer of the loan.  It is the master servicer of GSAMP Trust 2006-

HE5.

16.     LSI Title Company of Oregon, LLC ("LSI"), is an Oregon limited liability

company authorized to do business in Oregon.  LSI's principal place of business is 601 Riverside

Avenue, Jacksonville, FL 32204.

17.    The principal purpose of LSI is the collection of debts using the mail and telephone, and Defendant regularly attempts to collect debts alleged to be due another. Defendant LSI is engaged in the enforcement of security interests using the mail and telephone. Defendant LSI regularly attempts to collect consumer debts alleged to be due to another. Defendant LSI is a ''debt collector'' as defined by the FDCPA , 15 U.S.C. § 1692a(6).

18.    LSI has initiated a non-judicial foreclosure proceeding for the purpose of auctioning Ms. Rinegard-Guirma's home.

19.    Quality Loan Service Corporation of Washington ("Quality"), is a Washington corporation authorized to do business in Oregon.  Quality's principal place of business is 19735 10th Ave. NE, Ste. N-200, Poulsbo, WA, 98370.

20.    Quality is a business with its primary purpose being the enforcement of security interests.  The principal purpose of Quality is the collection of debts using the mail and telephone, and Defendant regularly attempts to collect debts alleged to be due another. Defendant Quality is engaged in the enforcement of security interests using the mail and telephone. Defendant Quality regularly attempts to collect consumer debts alleged to be due to another. Defendant Quality is a ''debt collector'' as defined by the FDCPA, 15 U.S.C. § 1692a(6).

21.    Quality, as agent for LSI, executed, and Ms. Rinegard-Guirma was sent, a Trustee's Notice of Sale for the purpose of auctioning her home.

**FACTUAL ALLEGATIONS**

**Background**

Page 5 - Third Amended Complaint

22.    Ms. Rinegard-Guirma is a low-income, African-American single mother of her eight-year-old child.

23.    Ms. Rinegard-Guirma has lived at her residence at 5731 NE 10th Avenue in Portland, Oregon, since 1995.

24.    On or around June 27, 2006, Ms. Rinegard-Guirma entered into the predatory subprime adjustable-rate loan at issue in this matter with Mortgage Lenders Network USA, Inc. ("Mortgage Lenders Network").  Ms. Rinegard-Guirma used proceeds of the loan to refinance her home and pay off an earlier subprime loan.

25.    Plaintiff's loan is a debt that constitutes an obligation to pay money that arose out of a transaction in which the property was primarily for personal, family or household purposes.

26.    In both the note and deed of trust Ms. Rinegard-Guirma signed for the loan at issue, Mortgage Lenders Network was identified as the lender.

27.    The deed of trust purported that the beneficiary under the security instrument was MERS.

28.    The deed of trust stated that MERS "is acting solely as nominee for Lender and Lender's successors and assigns."

29.    Less than a year after making the subject loan to Ms. Rinegard-Guirma, on February 5, 2007, Mortgage Lenders Network filed for Chapter 11 bankruptcy protection.  It had been the nation's 15th largest subprime lender.

30.    The adjustable-rate loan carried an initial annual interest rate of 9.1%, the lowest the interest rate could ever go.  The loan provided that the interest rate could increase to as much as 15.1%.

Page 6 - Third Amended Complaint

31.    By contrast, the average interest rate for a conventional, conforming 30-year fixed-rate mortgage for the week of June 22, 2006, was 6.71%.[2]

32.    During the housing boom, African Americans were 150 percent more likely to get high-cost loans than white borrowers.  Even when they had similar income and credit scores as white borrowers, African Americans were about 30 percent more likely to be steered to expensive mortgages.

33.    In the third quarter of 2010, 40.17% of subprime adjustable-rate loans in the United States were at least 90 days past due or in foreclosure.[3]

34.    The loan also was predatory because it contained a prepayment penalty providing that if Ms. Rinegard-Guirma prepaid the loan in full within two years of the date of the loan, she would be required to pay a penalty of 5% "of the portion of such prepayment equal to the principal amount so prepaid."

35.    Another predatory feature of the loan was its amortization.  Although the loan had a 30-year term, it amortized as if the term were 40 years.  The Truth in Lending Disclosure Statement generated in connection with the loan disclosed a payment schedule whereby Ms. Rinegard-Guirma would make 35 payments of $2,979.94 and 335 payments of $3,807.29, only to face a final balloon payment of $270,511.42.  Her initial monthly escrow payment for taxes and insurance was $184.51 for a total monthly payment of $3,164.45.

36.    At the time of her application for the loan, Ms. Rinegard-Guirma's income was

---

[2] Freddie Mac, Primary Mortgage Market Survey, http://www.freddiemac.com/pmms/pmms_archives.html.

[3] Mortgage Bankers Association, National Delinquency Survey Q3 2010.

$5,916.58.  Thus, 54% of her gross monthly income was devoted to her loan payments.

37.    The federal government's Home Affordable Modification Program ("HAMP"), by contrast, reduces fully amortizing home loan payments, including escrows for taxes and insurance, to 31% of a borrower's *gross* monthly income.  Under the program, this payment level is considered "affordable for borrowers now and sustainable over the long term."

38.    Ms. Rinegard-Guirma made payments on the loan through September 2007.  Her income began to drop.  In February 2008, her gross income was $5,560.00.  In October 2008, her gross income was $5,154.00.  In February 2009, it was $3,750.65.  At the time the instant action was filed, her gross monthly income was $2,340.

39.    Even before September 2007, Ms. Rinegard-Guirma had begun to make determined efforts to save her home, to no avail.

40.    While still current on her loan, she notified Litton that her income would dramatically decrease, a situation that would continue for a period of time.

41.    Litton informed her that because she was current on the loan, it could not help her.

42.    Ms. Rinegard-Guirma called Litton when the loan was 30 days past due to try to work out a plan to cure the delinquency.  Litton responded that it could not help because the loan was not 60 days past due.

43.    Ms. Rinegard-Guirma called Litton when the loan was 90 days past due to try to work out a plan to cure the delinquency.  Litton responded that it could not help because the loan was only 90 days past due.

44.    In preparation to foreclose the deed of trust for Ms. Rinegard-Guirma's home, on April 15, 2008, a Litton employee, Marti Noriega, signed an assignment of the deed of trust

Page 8 - Third Amended Complaint

purporting to be Vice President of MERS.

45.    By letter dated the following day, April 16, 2008, Litton offered Ms. Ringard-Guirma an unaffordable loan modification.  Litton proposed to reduce her interest rate to 7.0% and her principal and interest payments to $2,676.44.  Including the monthly amount due for taxes and insurance, the modification offered would have adjusted her monthly payments to approximately $2,907.17, or 49% of her gross monthly income at the time of her application for the loan.

46.    Also by April 16, 2008, Ms. Ringard-Guirma negotiated with Litton to reduce the amount necessary to pay off the loan to $247,852.  By letter dated April 16, 2008, Litton gave Ms. Ringard-Guirma 30 days to come up with the funds.

47.    On May 6, 2008, before the expiration of the offer, LSI executed a Notice of Default and Election to Sell Ms. Ringard-Guirma's property at a foreclosure auction.  On May 8, 2008, the notice was recorded in the Multnomah County Recorder's Office.

48.    On May 16, 2008, also before the expiration of the offer, Litton executed a Trustee's Notice of Sale of Ms. Ringard-Guirma's home, scheduling a sale date of September 22, 2008.

49.    Despite the threat to remove her from her home, Ms. Ringard-Guirma continued to pursue efforts to try to refinance.  On or about June 21, 2008, Ms. Ringard-Guirma was pre-approved for a fixed-rate 30-year loan with American General Financial Services ("American General") to pay off the reduced amount.  By a letter to Litton of or around that date, American General informed Litton that it estimated a closing date of July 21, 2008.

50.    Rather than give Ms. Ringard-Guirma until July 21, 2008, by letter dated June

23, 2008, Litton gave her until July 8, 2008, to make the payoff.

51.    Between   March 26, 2008, and August 28, 2008, Ms. Ringard-Guirma faxed Litton or its agents no fewer than 22 times in her efforts to refinance out of the predatory loan.

52.    Unable to obtain Litton's cooperation to pay off the loan and unable to afford an attorney, Ms. Ringard-Guirma was forced to file Chapter 13 bankruptcy *pro se* to try to save her home.

53.    Even while in the bankruptcy process, Ms. Ringard-Guirma continued to make efforts to resolve her situation with a sustainable loan modification.  On April 20, 2009, she faxed a loan modification request stating that her gross monthly income was $3,750.  By letter dated July 6, 2009, although Ms. Ringard-Guirma's monthly loan payments were approximately $3,614.81, Litton stated that it was "unable to provide an alternative workout solution because you have sufficient income to meet your monthly household expenses and pay the monthly payment for the referenced mortgage."

54.    Because Ms. Ringard-Guirma did not have sufficient income to make her monthly payment, she again attempted to modify her loan.

55.    On January 27, 2010, Ms. Ringard-Guirma's attempts to resolve her situation via bankruptcy ended in dismissal.

56.    On or around May 11, 2010, LSI filed a Notice of Default and Election to Sell Ms. Ringard-Guirma's home in a foreclosure auction.

57.    On or around May 17, 2010, Quality, as agent for LSI, sent plaintiff a Trustee's Notice of Sale. This Notice of Sale provided that LSI would conduct a nonjudicial foreclosure of plaintiff's home on September 21, 2010.

58.     Through the foreclosure of plaintiff's home, Bank of America, as Successor by Merger to LaSalle Bank as Trustee for the securitized trust, the purported beneficiary, LSI, as purported trustee, and Quality, as LSI's purported agent, sought to enforce a security interest, namely plaintiff's deed of trust.

59.     By letter dated June 10, 2010, Ms. Ringard-Guirma submitted a request to Litton under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(f)(2) for the name, address and phone number of the owner of the loan.

60.     By letter dated June 21, 2010, Litton, as the agent of Bank of America as Successor by Merger to LaSalle Bank as Trustee for the securitized trust, responded to Ms. Rinegard-Guirma's TILA request by stating, "The current beneficial holder of the loan is Bank of America."

61.     Bank of America was and is not the current beneficial holder of the loan.

62.     Litton, as the agent of Bank of America as Successor by Merger to LaSalle Bank as Trustee for the securitized trust, otherwise failed to provide the information Ms. Rinegard-Guirma had requested, violating TILA.

63.     By, among other things, responding to Ms. Rinegard-Guirma's request pursuant to TILA (albeit insufficiently) and serving as the servicer for Bank of America as Successor by Merger to LaSalle Bank as Trustee for the securitized trust, pursuant to the pooling and servicing agreement for the securitized trust and/or otherwise, Litton consented to act as agent for Bank of America as Successor by Merger to LaSalle Bank as Trustee for the securitized trust.

64.     As principal, Bank of America as Successor by Merger to LaSalle Bank as Trustee for the securitized trust, had the right at all relevant times throughout the duration of its

Page 11 - Third Amended Complaint

relationship with Litton to control the latter's acts, pursuant to the pooling and servicing agreement for the securitized trust and/or otherwise.

65.     On August 12, 2010, and August 19, 2010, Ms. Rinegard-Guirma made final efforts to apply for a modification under HAMP, submitting information and documentation toward this end to Litton.

66.     On September 8, 2010, Ms. Rinegard-Guirma filed this action *pro se* along with motions for a temporary restraining order and preliminary injunction.

67.     On October 6, 2010, this Court granted Ms. Rinegard-Guirma's motion for a temporary restraining order and preliminary injunction.


**The Purported Transfer of the Note per the Securitization of the Loan**

68.     Sometime between the date Ms. Rinegard-Guirma entered into the loan at issue and August 25, 2006, Mortgage Lenders Network purported to sell her loan so that it would eventually be included in a pool along with other similar obligations and securitized.

69.     According to the pooling and servicing agreement governing the securitized trust at issue, GSAMP Trust 2006-HE5, an agreement which was filed with the U.S. Securities and Exchange Commission, and the August 3, 2006, Prospectus Supplement, also on file with the SEC, the note was purportedly transferred as follows: first, from Mortgage Lenders Network to Goldman Sachs Mortgage Company, a company known as the Sponsor, formed by the financial institution creating the securitized trust; second, from the Sponsor to the Depositor, GS Mortgage Securities Corp., which issued the securities sold to investors, giving them the right to income generated by payments on the loans; and finally, from the Depositor to the Trustee for the

Page 12 - Third Amended Complaint

securitized trust, LaSalle Bank National Association.

70.     The trust comprises subprime loans.  The senior security of the trust is rated by Moody's  at Caa1, a very low junk bond category.

71.     Mortgage Lenders Network purported to indorse the note in blank for the purpose of transferring it.

72.     The purported indorsement in blank was purportedly converted to a special indorsement by Bank of America as Successor by Merger to LaSalle Bank as Trustee for the securitized trust.

73.     Bank of America as Successor by Merger to LaSalle Bank as Trustee for the securitized trust purports to be the holder of the note.

74.     Nothing in the Pooling and Servicing Agreement or Prospectus Supplement describes or authorizes the transfer of the note to or from MERS.


**The Purported Assignment of the Note and Deed of Trust by MERS and Appointment of Successor Trustee**

75.     On April 15, 2008, at 4:56 a.m, an employee of Litton, Marti Noriega, signed a purported assignment of the note and deed of trust at issue.

76.     The purported assignment was purported to be by MERS as Nominee in Favor of Mortgage Lenders Network to LaSalle Bank National Association, as Trustee under the Pooling and Servicing Agreement Dated as of August 1, 2006, GSAMP Trust 2006-HE5.

77.     On April 21, 2008, an employee of Litton, Diane Dixon, signed a document titled "Appointment of Successor Trustee."


Page 13 - Third Amended Complaint

78.     Dixon signed for Litton as attorney in fact for LaSalle Bank as Trustee for the securitized trust.

79.     The document titled "Appointment of Successor Trustee" purported to appoint LSI as successor trustee to Stewart Title of Oregon, Inc.

80.     The purported "assignment" of the note was invalid.

81.     MERS is not mentioned in the note in any capacity.  Neither by its terms nor otherwise has the note ever given any rights to MERS; nor does it do so now.

82.     The deed of trust for Ms. Rinegard-Guirma's home states, in pertinent part, "This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note." (p. 3 of 15).  The deed of trust further states, in pertinent part, "This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 of this Security Instrument to protect Lender's interest in the Property and rights under this Security Instrument." (p. 13 of 15, ¶ 26).

83.     The deed of trust for Ms. Rinegard-Guirma's home further states, in pertinent part:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any and all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

84.     The note secured by the deed of trust provides that payments are to be made to the Lender, not MERS.  (p. 1 of 4 at ¶ 1).

85.     Under the note or deed of trust, no other obligation was owed by Ms. Rinegard-Guirma to MERS.

86.     For MERS to have assigned (or transferred) the note, it would have been required to have a beneficial interest in the loan.

87.     MERS had – and continues to have – no beneficial interest in the loan.

88.     No benefits or harm flowed to MERS under any provision of the note by virtue of Ms. Rinegard-Guirma's performance or lack thereof pursuant to terms of the instrument.

89.     No benefits or harm flowed to MERS under any provision of the deed of trust by virtue of Ms. Rinegard-Guirma's performance or lack thereof pursuant to the terms of the instrument.

90.     In the event of a foreclosure, MERS was and is not entitled to proceeds from the foreclosure sale pursuant to the terms of the note or deed of trust.

91.     In other words, the relationship of MERS to the Lender is more akin to that of a straw man than to a party possessing all the rights given a buyer.

92.     Because MERS had no beneficial interest in the loan, it was not entitled to transfer the note.

93.     Neither Mortgage Lenders Network nor any other entity ever gave MERS the authority to transfer the note.

94.     MERS had no other authority to transfer the note.

95.     MERS' purported transfer of the note was without effect.

96.     In Oregon, a security instrument that secures performance of a loan –such as the deed of trust at issue – is merely an incident to the debt.

Page 15 - Third Amended Complaint

97.    The assignment of a deed of trust – such as the one at issue – independent of the debt which it is given to secure, is a ceremony without meaning.

98.    MERS did not effect the purported transfer of the note to LaSalle Bank as Trustee for the securitized trust or to Bank of America as Successor by Merger to LaSalle Bank as Trustee for the securitized trust.

99.    As MERS neither had a beneficial interest in the note nor any other authority to transfer the note, it did not have the authority to transfer the deed of trust.

100.    Though Noriega was an employee of Litton – the servicer of the loan – she identified herself as Vice President of Mortgage Electronic Registration Systems, Inc.

101.    Noriega was neither Vice President, nor an employee of any kind, of MERS at all times relevant to the allegations herein.  For this reason alone, the assignment of the deed of trust to LaSalle Bank as Trustee for the securitized trust was invalid.

102.    Even assuming, *arguendo*, that MERS was not prevented from assigning the deed of trust solely because it lacked a beneficial interest in the loan, Litton and Noriega lacked authority from MERS to assign the particular deed of trust for Ms. Rinegard-Guirma's home.

103.    Before a trustee named in a deed of trust may foreclose a deed of trust by advertisement and sale under the Oregon Trust Deed Act, among other things, "**any assignments of the trust deed by . . . *the beneficiary*** . . . [must be] recorded in the mortgage records in the counties in which the property described in the deed is situated[.]"  ORS 86.735(1) (emphasis added).

104.    As used in the Oregon Trust Deed Act, the **beneficiary** of a trust deed, in pertinent part, "means the person named or otherwise designated in a trust deed as the person **for**

**whose benefit a trust deed is given**, or the person's successor in interest . . . . " ORS 86.705(1) (emphasis added).

105.    Under the Oregon Trust Deed Act, "'Trust deed' means a deed executed in conformity with ORS 86.705 to 86.795, and conveying an interest in real property to a trustee in trust to secure **the performance of an obligation owed** by the grantor or other person named in the deed **to a beneficiary**."  ORS 86.705(5) (emphasis added).

106.    Under the Oregon Trust Deed Act, MERS was and is not a "beneficiary" of the trust deed for Ms. Rinegard-Guirma's home as it neither was nor is a person for whose benefit the trust deed was given, nor the person's successor in interest.  MERS neither had nor has any right to collect payments on the debt for which Ms. Rinegard-Guirma executed a note.  It neither had nor has any other beneficial interest in the note or deed of trust.

107.    LSI, the "successor trustee" LaSalle Bank as Trustee for the securitized trust purported to appoint, was not authorized to foreclose.

108.    Before a trustee named in a deed of trust may foreclose a deed of trust by advertisement and sale under the Oregon Trust Deed Act, among other things, "any appointment of a successor trustee [must be] recorded in the mortgage records in the counties in which the property described in the deed is situated[.]"  ORS 86.735(1).

109.    No valid appointment of LSI as successor trustee was recorded.  Because MERS' assignment of the deed of trust to LaSalle Bank as Trustee for the securitized trust was invalid, LaSalle Bank as Trustee for the securitized trust was not authorized to appoint a successor trustee.

110.    As a result of Defendants' unauthorized actions, plaintiff experienced a loss of

Page 17 - Third Amended Complaint

income and suffered severe emotional distress, including nausea, headaches, sleeplessness, depression as well as other negative health affects.

## PLAINTIFF'S FIRST CLAIM FOR RELIEF
(Violation of ORS 86.705, *et seq.*, against MERS, Bank of America as Successor by Merger to LaSalle Bank as Trustee for the securitized trust, Litton and LSI)

111.    Plaintiff restates and re-alleges the foregoing allegations of this Complaint as if fully restated herein.

112.    Because MERS was not authorized to assign the deed of trust for Ms. Ringard-Guirma's home, there was no valid assignment to LaSalle Bank as Trustee for the securitized trust.

113.    Neither Litton nor Noriega was authorized, on behalf of MERS, to sign an assignment of the deed of trust for Ms. Ringard-Guirma's home.

114.    As there was no valid assignment to LaSalle Bank as trustee for the securitized trust, there was – and is – no authority for LSI to foreclose the deed of trust.

115.    As LaSalle Bank as Trustee for the securitized trust was not the beneficiary of the deed of trust when it purported to appoint LSI as successor trustee under the trust deed, the appointment was invalid; as a result, LSI neither has ever had nor has the authority to foreclose the deed of trust.

116.    Ms. Ringard-Guirma is entitled to a judgment that MERS did not have the authority to assign the deed of trust for her home.

117.    Ms. Ringard-Guirma is entitled to a judgment that neither Litton nor Noriega was authorized, on behalf of MERS, to sign an assignment of the deed of trust for her home.

118.    Ms. Rinegard-Guirma is entitled to a judgment that there was no valid assignment of the deed of trust to LaSalle Bank as Trustee for the securitized trust.

119.    Ms. Rinegard-Guirma is entitled to a judgment that as there was no valid assignment of the deed of trust to LaSalle Bank as Trustee for the securitized trust, Bank of America as Successor by Merger to LaSalle Bank as Trustee for the securitized trust has not been assigned the deed of trust.

120.    Ms. Rinegard-Guirma is entitled to a judgment that LSI did not have the authority to begin proceedings to foreclose the deed of trust for her home, and to a permanent injunction preventing LSI from so foreclosing.


### PLAINTIFF'S SECOND CLAIM FOR RELIEF
(Violation of the Truth in Lending Act; against Bank of America)

121.    Plaintiff restates and re-alleges the foregoing allegations of this Complaint as if fully restated herein.

122.    As a result of the TILA violations, Bank of America is liable to Ms. Rinegard-Guirma pursuant to 15 U.S.C. § 1640(a) and § 1641(f)(2), for:

A.  Statutory damages of $4,000.00 for its failure to comply with its duties upon request by Ms. Rinegard-Guirma; and

B.  Reasonable attorney fees and costs.


### PLAINTIFF'S THIRD CLAIM FOR RELIEF
(Violations of the Fair Debt Collections Practices Act; against Bank of America, LSI, and Quality)

Page 19 - Third Amended Complaint

123.    Plaintiff restates and re-alleges the foregoing allegations of this Complaint as if fully restated herein.

124.    Defendants Bank of America, LSI and Quality violated the FDCPA. Defendants' violations include, but are not limited to, violation of 15 U.S.C. § 1692f(6) by taking or threatening to take any nonjudicial action to effect dispossession or disablement of the property when there is no present right to possession of the property claimed as collateral through an enforceable security interest.

125.    As a result of the above violations of the FDCPA, Defendants Bank of America, LSI and Quality are liable to the Plaintiff for declaratory judgment that defendants' conduct violated the FDCPA, and Plaintiff's actual damages, statutory damages, and costs and attorney's fees.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays that this Court:

1.  Assume jurisdiction of this case;

2.  On plaintiff's First Claim for Relief: (violation of ORS 86.705, *et seq.*,) , award a judgment against defendants MERS, Bank of America as Successor by Merger to LaSalle Bank as Trustee for the securitized trust, Litton and LSI:

    a.    that neither Litton nor Noriega neither were nor are authorized, on behalf of MERS, to sign an assignment of the deed of trust for her home;

    b.    that MERS did not have the authority to assign the deed of trust for her home;

Page 20 - Third Amended Complaint

c.    that there was no valid assignment of the deed of trust to LaSalle Bank as Trustee for the securitized trust;

d.    that as there was no valid assignment of the deed of trust to LaSalle Bank as Trustee for the securitized trust, Bank of America as Successor by Merger to LaSalle Bank as Trustee for the securitized trust has not been assigned the deed of trust;

e.    that LSI did not have the authority to begin proceedings to foreclose the deed of trust for her home, and to a permanent injunction preventing LSI from so foreclosing;

f.    For fees, costs and disbursements; and

g.    For such other relief as the Court deems necessary and proper.

3.  On plaintiff's Second Claim for Relief (violation of TILA, 15 U.S.C. § 1601, *et seq.*), award a judgment against Bank of America:

a.    ordering that it violated its obligations under 15 U.S.C. § 1641(f)(2);

b.    for statutory damages in the amount of $4,000.00 and attorney fees pursuant to 15 U.S.C. § 1640(a);

c.    for reasonable costs of the action; and

d.    for such further relief as this Court may deem necessary or proper.

4.  On plaintiff's Third Claim for Relief (violation of the FDCPA, 15 U.S.C. §§ 1692-1692p), award a judgment against Bank of America, LSI and Quality for the following:

a.    declaratory judgment that defendants' conduct violated the FDCPA;

Page 21 - Third Amended Complaint

b.    actual damages pursuant to 15 U.S.C. § 1692k;

c.    statutory damages pursuant to 15 U.S.C. § 1692k;

d.    costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k; and

e.    such other and further relief as may be just and proper.

DATED this 24th day of November, 2010.

LEGAL AID SERVICES OF OREGON

By:  /s/ David L. Koen
    David L. Koen, OSB no. 080941

Attorney for Plaintiff