IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


NATACHE D. RINEGARD-GUIRMA,
                    Plaintiff,

                                                          3:10-cv-01065-PK
                                                          OPINION AND ORDER


BANK OF AMERICA NA, AS SUCCESSOR
TRUSTEE BY MERGER TO LASALLE BANK
NATIONAL ASSOCIATION, AS TRUSTEE
UNDER THE POOLING AND SERVICING
AGREEMENT DATED AS OF AUGUST 1,
2006, GSAMP TRUST 2006-HE5;
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC; LITTON LOAN SERVICING
LP; LSI TITLE COMPANY OF OREGON,
LLC; AND QUALITY LOAN SERVICING
CORP. OF WASHINGTON,

                    Defendants.


PAPAK, Magistrate Judge:

    Plaintiff Natache Rinegard-Guirma filed this action against defendants[1] challenging the

---

[1] The defendants in this action are: Mortgage Electronic Registration Systems ("MERS")
which purported to assign the note and deed of trust for plaintiff's property to LaSalle Bank as
Trustee for the securitized trust, Bank of America National Association as Successor Trustee by
Merger to LaSalle Bank National Association, as Trustee Under the Pooling and Servicing
Agreement Dated as of August 1, 2006, GSAMP Trust 2006-HE5 ("Bank of America"), the
alleged beneficial owner of Rinegard-Guirma's loan when the foreclosure was initiated,
defendant Litton Loan Servicing ("Litton"), the loan servicer at that time, LSI Title Company of
Oregon ("LSI"), which initiated the foreclosure by recording a Notice of Default and Election to
Sell, and Quality Loan Servicing Corporation of Washington ("Quality"), which executed and

OPINION AND ORDER - Page 1

attempted non-judicial foreclosure of her Portland, Oregon home.  Plaintiff asserts claims for

violation of the Oregon Trust Deed Act (OTDA), Or. Rev. Stat. § 86.705 *et seq.*, breach of

contract, violation of the Truth in Lending Act (TILA), 15 U.S.C. §1641(f)(2), and violation of

the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692f(6).  Since plaintiff filed this

suit, defendants have abandoned attempts to foreclose non-judicially and the purported current

holder of plaintiff's loan has initiated a judicial foreclosure proceeding in Multnomah County

Circuit Court.  Now before the court are Bank of America and Litton's motion for judgment on

the pleadings (#116) and request for judicial notice (#118), MERS' joinder in the motion for

judgment on the pleadings (#119), LSI and Quality's oral motion to join the motion for judgment

on the pleadings, and plaintiff's motion for leave to file a fifth amended complaint (#123.)  For

the reasons described below, the request for judicial notice is granted, the joint motion for

judgment on the pleadings is granted in part and denied in part, and the motion for leave to

amend is granted in part and denied in part.

## BACKGROUND

The following facts are drawn from plaintiff's active fourth amended complaint or

the proposed fifth amended complaint when specifically identified, and documents properly

subject to judicial notice.

## I.        Loan, Attempted Modification, and First Non-Judicial Foreclosure

In June 2006, Rinegard-Guirma entered into what she describes as a "predatory

subprime adjustable-rate loan" with Mortgage Lenders Network USA, Inc. by executing a note

---

served plaintiff a Trustee's Notice of Sale.

and deed of trust. (4th Amend. Compl., #79, ¶¶24,25.) The deed of trust identified MERS as "the beneficiary under this Security Instrument" and also stated that MERS was "acting solely as nominee for the Lender" and its successors and assigns. (Request for Judicial Notice, #118, Ex. A.) Rinegard-Guirma stopped making payments on the loan in October 2007 after her income dropped. (4th Amend. Compl., #79, ¶40.) She communicated several times with Litton, the loan servicer, about creating a plan to cure her delinquency, but Litton rebuffed her efforts until April 2008, when Litton offered Rinegard-Guirma a reduction in the total loan amount and gave her 30 days to agree to a loan modification. *Id.* at ¶¶41-48. Before the 30 days had passed, LSI and Litton instituted a non-judicial foreclosure proceeding with a scheduled foreclosure sale date in September 2008. *Id.* at ¶¶49-50. That foreclosure sale apparently never occurred, and over the next year and half, Rinegard-Guirma filed for Chapter 13 bankruptcy and continued her attempts to obtain a loan modification. *Id.* at ¶¶55-57.

## II.     Second Non-Judicial Foreclosure

Over two years after the first attempt at non-judicial foreclosure, in May 2010, Litton and LSI again initiated a non-judicial foreclosure proceeding, with Litton directing LSI to file a Notice of Default and Election to Sell and Quality to send plaintiff a Trustee's Notice of Sale. *Id.* at ¶¶ 58-59. At the time, Litton acted as an agent for the purported holder of the loan, Bank of America as Successor Trustee, which was attempting to enforce its security interest by foreclosing on the deed of trust. *Id.* at ¶59. The next month, Rinegard-Guirma submitted a Truth in Lending Act (TILA) request to Litton seeking the name, address, and phone number of the owner of the loan. *Id.* at ¶61. Litton responded only that "[t]he current beneficial holder of the loan is Bank of America." *Id.* at ¶62.

OPINION AND ORDER - Page 3

III.     **Federal Suit and Judicial Foreclosure**

The second non-judicial foreclosure proceeding was temporarily halted after

Rinegard-Guirma filed this action *pro se* in September 2010 and obtained a temporary restraining

order and preliminary injunction in October 2010. In January 2011, LSI recorded a Rescission of

Notice of Default, effectively terminating the non-judicial foreclosure proceeding. (Request for

Judicial Notice, #118, Ex. B.) In August 2011, the district court clarified its preliminary

injunction to permit the initiation of a judicial foreclosure proceeding on Rinegard-Guirma's

property. (Order, #107.) A few months later, in December 2011, U.S. Bank, N.A., as successor

in interest to Bank of America, N.A., as successor by merger to LaSalle Bank, N.A., as Trustee

under the Pooling and Servicing Agreement Dated as of August 1, 2006 GSAMP Trust 2006-

HE5 (hereinafter "U.S. Bank") initiated a judicial foreclosure action in the Circuit Court for

Multnomah County as the successor in interest to the securitized trust. *Id.* at Ex. A.

IV.      **Claims Alleged**

In both the active fourth amended complaint and the proposed fifth amended

complaint, Rinegard-Guirma alleges four different claims.

A.       **Violation of OTDA**

The first claim, against Bank of America, Litton, MERS, and LSI, asserts that the

assignment of the note and deed of trust from MERS to LeSalle Bank was invalid, and

consequently, so was LeSalle Bank's appointment of LSI as successor trustee. *Id.* at ¶¶117-120.

Rinegard-Guirma seeks a declaration of such as well as a permanent injunction preventing LSI

from foreclosing. *Id.* at ¶¶121-125. The proposed fifth amended complaint retains the theory

that LSI did not have authority to foreclose, but also alleges a second type of OTDA violation,

OPINION AND ORDER - Page 4

namely, that not all assignments of the beneficial interest in the deed of trust were recorded prior to the initiation of non-judicial foreclosure proceedings as required by statute. The proposed fifth amended complaint again seeks a declaration concerning the invalidity of MERS-related assignments and the non-recordation of all assignments of the beneficial interest, but no longer seeks any injunctive relief.

### B.    Breach of Contract

The second claim, against Bank of America, Litton, and LSI[2], alleges a breach of the terms of the deed of trust and the note. Section 22 of the deed of trust states that:

> If Lender invokes the power of sale, . . . Lender or Trustee shall *give notice of sale in the manner prescribed by Applicable Law* to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder . . . .

(4th Amend. Compl., #79, ¶112) (emphasis added). Plaintiff's prayer explains that LSI's execution of the notice of sale violated applicable law for the same reasons described in the first claim above– LSI was not a validly appointed successor trustee. *Id.* at 23. In the fourth amended complaint, Plaintiff contends that LSI (acting for Bank of America's benefit) violated the deed of trust by attempting to foreclose. In the proposed fifth amended complaint, plaintiff expands the scope of her allegations by contending that Bank of America, acting through its agent Litton, caused LSI to initiate and maintain the foreclosure proceedings. (Prop. 5th Amend. Comp., #123-1, Ex. A at ¶¶ 166-167.) Unlike the first claim, which does not seek damages, this claim seeks a declaration that defendants breached the note and deed of trust because LSI lacked

---

[2] LSI is removed from this claim in the proposed Fifth Amended Complaint.

the authority to foreclose, a permanent injunction preventing LSI from foreclosing, as well as actual damages, attorney fees, costs, and disbursements.

### C.      Violation of TILA

Plaintiff alleges that Bank of America violated TILA, 15 U.S.C. §1641(f)(2), by failing to provide accurate information in response to plaintiff's June 2010 request.  She seeks a judgment declaring that Bank of America violated TILA as well as statutory damages, attorney fees, and costs.  Plaintiff's proposed fifth amended complaint makes no changes to this claim.

### D.      Violation of FDCPA

Plaintiff alleges that Bank of America, LSI, and Quality violated the FDCPA, 15 U.S.C. § 1692f(6), by taking or threatening to take action to effect dispossession or disablement of plaintiff's property when there was no right to possession of the property claimed as collateral through a security interest.  In this claim, plaintiff seeks a declaration that defendants violated the FDCPA, actual and statutory damages, and attorney fees and costs.  Plaintiff's proposed fifth amended complaint also makes no changes to this claim.

## LEGAL STANDARDS

### I.      Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings, like a motion to dismiss for failure to state a claim, addresses the sufficiency of a pleading.  Judgment on the pleadings may be granted when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that the moving party is entitled to judgment as a matter

of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

In testing the sufficiency of a pleading, the well-plead allegations of the non-moving party are

accepted as true, while any allegations of the moving party which have been denied are assumed

to be false. *Id.* at 1550.    However, the court need not accept conclusory allegations. *W. Mining

Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## II.        Motion for Leave to Amend

A party may amend a pleading once as a matter of course before being served with a

responsive pleading or within 20 days after serving the pleading but thereafter may only amend

by consent of the opposing party or leave of the court. Fed. R. Civ. P. 15(a). "The court should

freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  Leave to amend is within

the discretion of the trial court, but that discretion "should be guided by the underlying purpose

of Rule 15(a) which was to facilitate decisions on the merits, rather than on technicalities or

pleadings." *In re Morris*, 363 F.3d 891, 894 (9th Cir. 2004) (citation omitted).  "A district court

may, however, take into consideration such factors as bad faith, undue delay, prejudice to the

opposing party, futility of the amendment, and whether the party has previously amended his

pleadings." *Id.* (citation omitted).  Of these factors, the most important is the potential for

prejudice to opposing parties. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321,

330-31 (1971).  While futility alone provides sufficient grounds for denying a motion to amend,

*see Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004), undue delay by itself cannot justify

denial of a motion to amend. *See Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999).  "An

outright refusal to grant leave to amend without a justifying reason is . . . an abuse of discretion."

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008) (citation

omitted).

## DISCUSSION

At oral argument, plaintiff stipulated that she no longer seeks declaratory or injunctive relief of any sort, and to the extent her current or proposed pleadings seem to state such claims, it is the result of drafting error. Accordingly, the only claims remaining for this court to address are three causes of action for damages– the claim for breach of contract, the TILA claim, and the FDCPA claim. Defendants argue that all of these claims are based on the theory that defendants lacked authority to initiate non-judicial foreclosure proceedings because of MERS' role in the transaction and are now mooted by the termination of non-judicial foreclosure proceedings and the filing of a judicial foreclosure action in state court. Alternatively, defendants argue that these three remaining damages claims fail as a matter of law. As described below, I find that Rinegard-Guirma's FDCPA and breach of contract claims fail as a matter of law against all named defendants. By contrast, plaintiff's TILA claim is properly plead against Bank of America. Accordingly, allowing Rinegard-Guirma to file her proposed amended complaint would be futile, with the exception of her TILA claim, which should be re-pled.

## I.      Request for Judicial Notice

As a preliminary matter, defendants ask the court to take judicial notice of the fact that two documents were filed in public records: (1) the Complaint for Foreclosure of a Trust Deed, on December 7, 2011 in Multnomah County Circuit Court; and (2) the Rescission of Notice of Default by LSI, on January 18, 2011. (Request for Judicial Notice, #118.) Plaintiff concedes the authenticity of these documents, but opposes to the extent the court intends to take judicial notice of "any disputed facts contained in or derived from the documents." (Opp. to

Request, #130, at 3.)  Here, the court will not take judicial notice of any disputed facts contained within the Complaint and Rescission of Notice, but rather, only of the undisputed fact that a Complaint and Rescission of Notice of Default were filed and appear as they are presented in the request for judicial notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001) (holding that district court improperly took judicial notice of disputed facts recited within public record documents).

## II.        Motion for Judgment on the Pleadings

Plaintiff's stipulation at oral argument that she asserts only damages claims simplifies this case substantially.  In light of that stipulation, defendants' contention that Rinegard-Guirma's breach of contract, TILA, and FDCPA claims are moot is entirely unpersuasive.  The Ninth Circuit makes clear that "a live claim for even nominal damages will prevent dismissal for mootness." *Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 425 (9th Cir. 2008) (internal quotations omitted).  Thus, despite that plaintiff's contract and FDCPA claims allege error in the non-judicial foreclosure process because of MERS' role, they are still live claims for damages and are not moot.  Plaintiff's TILA claim is slightly different because it does not even depend on the alleged invalidity of the non-judicial foreclosure proceeding.  But it too seeks damages and is therefore not moot.  Consequently, I address whether defendants are entitled to judgment as a matter of law on these three remaining damages claims.  I conclude that plaintiff's FDCPA and breach of contract claims fail as a matter of law, while plaintiff's TILA claim survives.

### A.        FDCPA Claim

The FDCPA provides that a "debt collector may not use unfair or unconscionable

means to collect or attempt to collect any debt," including, among other things, "[t]aking or

threatening to take any nonjudicial action to effect dispossession or disablement of property if—

(A) there is no present right to possession of the property claimed as collateral through an

enforceable security interest." 15 U.S.C. § 1692f(6)(A).  Plaintiff alleges that Bank of America,

LSI, and Quality violated the FDCPA, 15 U.S.C. § 1692f(6), by pursuing a non-judicial

foreclosure despite lacking a right to possession of her property.  Defendants[3] contend that the

FDCPA claim fails for two reasons: (1) Bank of America was not a "debt collector" under the

statute; and (2) foreclosing on a trust deed is not "collect[ing] [a] debt" under the statute.

"To state a claim for a violation of the FDCPA, a plaintiff must allege that the

defendant is a 'debt collector' collecting a 'debt.'" *Stewart v. Mortgage Elec. Registration Sys.,*

*Inc.*, No. 09-688-PK, 2010 WL 1054384, at *9–2 (D. Or. Feb. 18, 2010) (quoting *Ines v.*

*Countrywide Home Loans*, 2008 WL 4791863 *2 (S.D.Cal. Nov. 3, 2008)).  For the purposes of

the FDCPA, the term "debt collector" means "any person who uses any instrumentality of

interstate commerce or the mails in any business the principal purpose of which is the collection

of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or

due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  However, the term "debt

collector" does not include "any person collecting or attempting to collect any debt owed or due

or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which

was not in default at the time it was obtained by such person . . . ." 15 U.S.C. § 1692(a)(6)(F).

---

[3] Although only Bank of America and Litton formally moved for judgment on the
pleadings, at oral argument LSI and Quality informally joined that motion as to the FDCPA
claim.  Thus, I address the sufficiency of plaintiff's FDCPA claim against all defendants,
including LSI and Quality.

OPINION AND ORDER - Page 10

Defendants argue that plaintiff was not a debt collector under the FDCPA. First, they contend that plaintiff's fourth amended complaint does not allege Bank of America was, in fact, a debt collector or allege sufficient facts to support the conclusion that Bank of America was a debt collector. Although these arguments might be enough to force dismissal of plaintiff's claim without prejudice, her proposed amended complaint cures that deficiency, alleging Bank of America is a debt collector as defined in the FDCPA, and asserting facts from which the court could reasonably infer that Bank of America became successor trustee to a securitized trust holding many loans already in default. (5th Amend. Compl., #123-1, ¶11) (from 2008 to 2011 Bank of America collected or attempted to collect debts owed on approximately 6,000 loans held by the securitized trust).

Defendants also contend that plaintiff's factual allegations preclude Bank of America from being characterized as a debt collector. Defendants point out that because plaintiff's loan was transferred to the securitization trust in August 2006 and plaintiff's loan went into default in October 2007, plaintiff's debt was not in default at the time it was obtained by the securitization trust, for which Bank of America later became successor trustee. Thus, defendants argue that Bank of America fits the exception described in 15 U.S.C. § 1692a(6)(F)(iii), which provides that an entity collecting a debt that was not in default when the entity obtained it is not a debt collector under the FDCPA. This argument improperly shifts focus to the securitization trust itself, when the court must instead attend to the point at which Bank of America received the beneficial interest in the note or the deed of trust. *See Thepvongsa v. Reg'l Tr. Servs. Corp.*, No. C10-1045 RSL, 2011 WL 307364, at *7, n. 8 (W.D. Wash. Jan. 26, 2011) ( to determine whether the exemption in § 1692a(6)(F)(iii) applied, court analyzed whether plaintiff alleged that his debt

OPINION AND ORDER - Page 11

was in default "prior to the Assignment to [trustee of the securitized trust] of the beneficial interest in the deed of trust"). In fact, if plaintiff's allegations are assumed to be true, it is assured that Bank of America took on the role of trustee only *after* plaintiff's loan went into default. Plaintiff alleged that MERS transferred the deed of trust to LeSalle Bank in May 2008, almost a year after plaintiff's defaulted, and Bank of America took over as a successor trustee *after* LeSalle Bank. Accordingly, the § 1692a(6)(F)(iii) exception cannot apply to Bank of America.

Even so, I agree with defendants that Rinegard-Guirma still fails to state a FDCPA claim because foreclosing on a deed of trust does not qualify as collecting a debt for the purposes of the FDCPA. The vast majority of district courts in this circuit, including this court in previous decisions, holds that the FDCPA does not apply to actions taken by lenders or their agents in foreclosing on a lenders' security interest. *See Cromwell v. Deutshe Bank Nat'l Trust Co.*, No. C 11-2693 PJH, 2012 U.S. Dist. LEXIS 8528, at *5 (N.D. Cal. Jan. 25, 2012) (collecting cases); *Stewart v. Mortgage Elec. Registration Sys., Inc.*, No. CV. 09-688-PK, 2010 WL 1054384, at *2 (D. Or. Feb. 18, 2010) (because foreclosing on property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA, plaintiff fails to plead that the defendants were "collecting a debt"). The Ninth Circuit has not yet ruled on the issue, but district courts in the circuit almost uniformly cite *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) for this generally accepted proposition.

By contrast, a small minority of district courts in this circuit contemplate that the FDCPA applies to non-judicial foreclosures, relying on the persuasive authority of decisions by the Second, Third, Fourth, and Fifth Circuits. *Cromwell*, 2012 U.S. Dist. LEXIS 8528, at *6-7

OPINION AND ORDER - Page 12

(collecting cases); *Kaltenbach v. Richards*, 464 F.3d 524, 528-29 (5th Cir. 2006) ("We therefore hold that a party who satisfies § 1692a(6)'s general definition of a 'debt collector' is a debt collector for the purposes of the entire FDCPA even when enforcing security interests."); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006) ("Wilson's 'debt' remained a 'debt' even after foreclosure proceedings commenced."); *Piper v. Portnoff Law Assocs.*, 396 F.3d 227, 234 (3d Cir. 2005) ("The fact that the [Pennsylvania Municipal Claims and Tax Liens Act] provided a lien to secure the Pipers' debt does not change its character as a debt or turn PLA's communications to the Pipers into something other than an effort to collect that debt."); *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 116 (2d Cir. 1998) (concluding that an eviction notice required by statute could also be an attempt to collect a debt). I find some of these decisions of other circuits compelling, especially in their observation that exempting foreclosure from the FDCPA would "create an enormous loophole in the Act immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt." *Wilson,* 443 F.3d at 376. Nevertheless, absent guidance from the Ninth Circuit, I am not prepared to diverge from the general consensus of district courts in this circuit that foreclosure on a deed of trust is outside the scope of the FDCPA. Consequently, plaintiff's pleading, either the active or proposed amended complaint, fails to state a claim for relief under FDCPA against any defendant.

### B.    Breach of Contract Claim

Rinegard-Guirma alleges that LSI (acting for Bank of America's benefit) violated the terms of the deed of trust by attempting to foreclose without following applicable state law. Defendants' contend that this claim fails as a matter of law because plaintiff does not allege

substantial performance of her obligations under the deed of trust, given that she conceded she defaulted on her payment obligations in October 2007. Plaintiff counters that her lack of substantial performance was excused because Litton and Bank of America also failed to substantially perform by initiating foreclosure proceedings even before their agreed-upon deadline for plaintiff to take advantage of their loan modification offer.

The deed of trust appears as an exhibit to U.S. Bank's complaint in the state court action, which is properly subject to this court's judicial notice. In Section 1 of that document, the borrower (plaintiff) promises, among other covenants, to "pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note." (Req. For Jud. Notice, #118, Ex. A, identified as p. 4 of 16). Thus, taking all of Rinegard-Guirma's allegations as true, I must find that she breached this obligation by failing to make loan payments starting in October 2007. Moreover, plaintiff's breach cannot be excused by an earlier failure by defendants to perform. According to plaintiff's complaint, defendants' offer of a loan modification came in mid-April 2008, many months after plaintiff's admitted default. Thus, plaintiff's default preceded defendants' allegedly premature initiation of foreclosure proceedings.

Because plaintiff does not allege substantial performance of her obligations under the Deed of Trust, her breach of contract claim must fail as a matter of law. *See Clow v. Bank of Am.*, No. 10–3093–CL, 2011 WL 7153930, at *2 (D. Or. Dec. 19, 2011) (dismissing breach of contract claim for failure to allege full performance when complaint concedes default); *cf. Bernardi v. JPMorgan Chase Bank, N.A.*, No. C–11–04543 RMW, 2012 WL 33894, at *3 (N.D. Cal. Jan. 6, 2012) (refusing to dismiss breach of contract claim based on deed of trust only

OPINION AND ORDER - Page 14

because plaintiff made "marginal" allegations of performance and court concluded that it would

be "inappropriate to resolve at this stage the factual issue of whether plaintiffs are in default.")

### C.        TILA Claim

Plaintiff's TILA claim alleges that Bank of America violated TILA, 15 U.S.C.

§1641(f)(2), through Litton's failure to provide accurate information in response to plaintiff's

June 2010 request for the name, address, and phone number of the holder of her loan.  15 U.S.C.

§1641(f)(2) provides, in part, that "[u]pon written request by the obligor, the servicer shall

provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone

number of the owner of the obligation or the master servicer of the obligation." *Id.*

Bank of America argues that plaintiff's TILA claim fails because: (1) Bank of America cannot be

vicariously liable for Litton's failure to provide information as a "servicer"; and (2) Bank of

America cannot be held liable for its own conduct because it is not a "creditor" under TILA.  I

find both arguments unpersuasive.

Bank of America first argues that it is not a "servicer" obligated to comply with 15

U.S.C. §1641(f), and that §1641(f) does not provide for vicarious liability of a "creditor" for the

failure of a "servicer" to respond to requests for information.   Plaintiff, by contrast, insists that a

creditor may be vicariously liable for its servicer's violation of §1641(f).  The most articulate

decision supporting plaintiff is *Davis v. Greenpoint Mortg. Funding, Inc.*, No.

1:09–CV–2719–CC–LTW, 2011 WL 7070221, (N.D. Ga. Mar. 1, 2011), *adopted in part,*

*rejected in part on other grounds*, 2011 WL 7070222 (N.D. Ga. Sept. 19, 2011).  There, the court

observed that Congress amended TILA in 2009 to create a private right of action against creditors

for a violation of Section 1641(f)(2).  *See* 15 U.S.C. § 1640(a) (establishing liability of "any

creditor who fails to comply with any requirement imposed under this part, including any requirement under . . . [Section 1641(f) or 1641(g)]"). This amendment was motivated both by Congress' general desire to provide a private right of action enforcing § 1641(f)(2) to "protect homeowners from harms associated with nondisclosures" and to allay concerns raised by an emblematic TILA case where a servicer's failure to reveal the identity of the current holder of a borrower's loan prevented the borrower from bringing a timely TILA rescission claim. *Davis*, 2011 WL 7070221, at *3. Because TILA does not contain any provisions allowing a consumer to bring a civil action against a servicer for a violation of Section 1641(f)(2), the *Davis* court observed "the private right of action that Section 1640(a) creates [against a creditor] would be meaningless, unless agency principles permit a creditor to be held liable for Section 1641(f)(2) violations committed by its servicer." *Id.* at *4. Thus, "to avoid rendering Section 1640(a) superfluous," the *Davis* court concluded that "agency principles apply, and creditors may be held vicariously liable for the Section 1641(f)(2) violations of their servicers." *Id.* (citing a similar holding in *Consumer Solutions Reo, LLC v. Hillery*, 2010 U.S. Dist. LEXIS 37857, at *9-17 (N.D. Cal. Mar. 24, 2010) where the district court applied agency principles to § 1641(f)(2), extrapolating from the decisions of other courts that have assumed TILA incorporated common law agency theory to effectuate its purpose as a remedial consumer protection statute).

On the other hand, the best example of a decision endorsing Bank of America's position is *Holcomb v. Fed. Home Loan Mortg. Corp.*, 2011 WL 5080324, at *6-7 (S.D. Fla. Oct. 26, 2011), which criticized the approach taken by *Consumer Solutions* because it conflicted with TILA's imposition of the separate duty on new creditor assignees of a loan to notify borrowers in writing of the loan's transfer. *See* 15 U.S.C. § 1641(g). The *Holcomb* court acknowledged the

OPINION AND ORDER - Page 16

"disastrous effects" of a servicer's failure to disclose on a borrower's TILA rights and the

"alarming" difficulties in enforcing § 1641(f)(2) without accompanying vicarious liability of

creditors. *Id.* Nevertheless, the court concluded that it "cannot say that Congress intended to

make creditors and assignees liable under § 1641(f)(2)" and expressed concerns that expanding

liability to creditors would encourage borrowers to make "improperly motivated requests for

information" and thereby "convert TILA from a shield protecting consumers into a sword

allowing them to strike lenders who have followed the statute and its regulations as closely as

logic permits." *Id.* (internal quotations and citations omitted).

I find the *Davis* court's approach more persuasive. First, *Holcomb* is suspect because

it completely ignores the language and effect of the 2009 TILA amendments, which bear directly

on a creditor's liability under Section 1641(f). Morever, although only a handful of courts have

addressed this issue, the trend is towards recognizing creditor liability for servicer's violations of

§1641(f). Just a few weeks ago, a soon-to-be-published Florida district court opinion grappling

with this precise topic extensively examined both *Davis* and *Holcomb*, eventually following the

approach taken by *Davis*. *Khan v. Bank of N.Y. Mellon*, No. 12–60128–CIV–DIMITROULEAS,

— F. Supp. 2d —, 2012 WL 1003509, at *2-6 (S.D. Fla. Mar. 19, 2012) ("the Court is persuaded

that Congress meant to extend agency principles to creditors or make creditors liable under §

1641(f)(2) by intentionally inserting the private right of action for violations of § 1641(f)(2) into

§ 1640(a), a remedy section that provides for civil liability against creditors."). Although the

Florida court acknowledged the difficulties of the statutory language and the dearth of

interpretive authority, it emphasized the importance of construing TILA so as not to render §

1641(f)(2) "essentially without effect" as well as the remedial nature of TILA as a consumer

protection statute. *Id.* at *5. Likewise, I reject Bank of America's contention that a creditor cannot be liable for it's servicer's § 1641(f)(2) violation.

Bank of America also argues, however, that even if vicarious liability principles apply, it still cannot be liable for Litton's alleged violation of § 1641(f)(2). Not only is Bank of America not a "creditor" as defined in TILA, it insists, but even as an assignee of a creditor, it cannot be held liable for a loan servicer's § 1641(f)(2) violations. These arguments raise another difficult question of statutory interpretation.

Under TILA, a "creditor . . . refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit . . ., and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness . . . ." 15 U.S.C. § 1602(f). Reading this definition in conjunction with § 1604(a) – the subsection creating the right of action against "creditors" for violations of § 1641(f) – and the *Davis* line of cases indicates that an original lender listed on the face of the loan may be held vicariously liable for a servicer's violation of § 1641(f)(2) violation.

However, at first glance, TILA does not appear to extend that same liability to assignees of creditors, *i.e.*, entities that subsequently purchase a loan from the original lender. Assignees' liability under TILA is not co-extensive with creditors' liability. Rather, an assignee is only liable for a subset of TILA violations that are "apparent on the face of the disclosure statement, except where the assignment was involuntary." 15 U.S.C. § 1641(a). Obviously, a servicer's failure to provide information to a borrower about the owner of her loan in violation of § 1641(f)(2) is not the type of defect that would be apparent on the face of a disclosure statement,

since a servicer's role only begins after disclosures are made. Thus, a cursory reading of TILA appears to allow a borrower to hold an original lender liable for a servicer's reporting failure, but not an assignee of that original lender. Bank of America urges us to accept this construction of TILA.

Such a result, however, would conflict with the purpose of Congress' 2009 TILA amendment, other statutory language within TILA, and case law recognizing the possibility that assignees of creditors can also be held liable for servicer's § 1641(f)(2) violations. First, as *Davis* explained, Congress added the private right of action against creditors for §1641(f) violations specifically to solve the problem of borrowers being unable to determine who, in fact, held their loans. If Congress' newly created right of action to enforce § 1641(f) was interpreted narrowly to apply only to a "creditor" and not an assignee of that creditor, Congress' 2009 amendment be no solution at all. A borrower already knows the identity of her original lender (the "creditor" in TILA parlance) precisely because that lender appears on the face of her loan documents. It is much more difficult for a borrower to track down subsequent assignees of her loan, notwithstanding assignees' obligation under 15 U.S.C. § 1641(g)(1) to notify borrowers when the borrower's loan is transferred. Interpreting TILA to enforce § 1641(f)(2) against "creditors" but not against assignees of creditors would undermine Congress' intent in enacting the 2009 amendment and render that amendment practically useless.

Indeed, the folly of such an interpretation is made clear when examining a servicer's obligations under TILA. For instance, Section §1641(f)(1) provides that a loan servicer is not treated as an "assignee" unless it is also the "owner of the obligation." Thus, a servicer assigned a loan from "the creditor or another assignee to the servicer solely for the administrative

convenience of the servicer in servicing the obligation" is not treated as an "owner of the obligation for purposes of this section . . . ." 15 U.S.C. § 1641(f)(2). Courts have interpreted these provisions to mean that a loan servicer who is also an owner of the obligation may be held liable for its failure to provide requested information as required by § 1641(f). *Khan, 2012 WL 1003509, at \*6 n.2* ("an entity that is both the servicer and lender on a loan" could be liable for damages for failure to report as required by § 1641(f)(2)); *Marks v. Ocwen Loan Servicing*, 2008 U.S. Dist. LEXIS 12175, at \*4-5, 2008 WL 344210 (N.D.Cal. Feb.6, 2008) ("Although TILA provides that assignees of a loan may be liable for TILA violations, loan servicers are not liable under TILA as assignees unless the loan servicer owned the loan obligation at some point."). In other words, it is precisely the servicer's acquisition of ownership of the loan through "an assignment of the obligation from the creditor or another assignee," 15 U.S.C. § 1641(f)(2), that transforms the servicer from an entity with no liability under § 1641(f)(2) to one that can be held liable. Interpreting TILA to spare all assignees from liability under § 1641(f)(2) would directly conflict with the TILA provisions indicating that servicer/assignees can in fact be liable under § 1641(f)(2).

Further, although I find no authority specifically analyzing an argument like the one Bank of America makes here, cases indeed hold that a borrower properly states a claim against an *assignee* of a creditor for its servicer's violation of § 1641(f)(2). In *Davis,* for example, plaintiff sought leave to amend her complaint to allege § 1641(f)(2) claims against both the original lender, Greenpoint, and the presumed current holder of her loan, Fannie Mae. *Davis,* 2011 WL 7070221, at \*1-2. The court rejected defendants' argument that those claims were futile, allowing plaintiff to proceed against both Greenpoint and Fannie Mae. *Id.* at \*6. Similarly, in

*Khan*, plaintiffs filed a complaint against Bank of New York Mellon, the trustee for a securitized

trust holding their loan, alleging that the bank's servicer failed to comply with § 1641(f)(2).

*Khan*, — F. Supp. 2d —, 2012 WL 1003509, at *1. Bank of New York Mellon moved to

dismiss plaintiffs' complaint arguing that "as the creditor of the mortgage loan at issue" it could

not be liable for its servicer's violation of § 1641(f)(2). Again, as described above, the court

disagreed and denied the bank's motion to dismiss. These holdings demonstrate that courts

which recognize a creditor's vicarious liability under § 1641(f) necessarily extend that liability to

assignees of creditors.

 In sum, the text of TILA, Congress' demonstrated intent in passing the 2009

amendments, and cases interpreting TILA all lead me to conclude that Rinegard-Guirma properly

alleges a TILA claim against Bank of America for its servicer's alleged violation of 15 U.S.C. §

1641(f).

## III.  Motion to Amend

 Defendants' opposition to Rinegard-Guirma's motion to amend primarily argues that

plaintiff's claims are futile for all the reasons described in their motion for judgment on the

pleadings. Since I grant defendants' motion as to all claims except the TILA claim against Bank

of America, plaintiff does not have leave to amend to state any of those dismissed claims.

Defendants, however, have not provided any other reason why plaintiff should be prohibited

from amending to re-state her TILA claim.

## IV.  Appointment of Pro Bono Counsel

 Given my ruling today that one of Rinegard-Guirma's claims survives defendants'

motions for judgment on the pleadings, I find that it is now appropriate for plaintiff to again seek

OPINION AND ORDER - Page 21

appointment of pro-bono counsel. Pursuant to my prior order (#153), I request the clerk to submit a request for pro bono counsel to assist plaintiff.

CONCLUSION

For the reasons described above, Bank of America and Litton's request for judicial notice (#118) is granted, Bank of America and Litton's motion for judgment on the pleadings (#116), joined orally by Quality and LSI and formally by MERS (#119), is granted as to all claims and all defendants except Rinegard-Guirma's TILA claim against Bank of America, and Rinegard-Guirma's motion for leave to file a fifth amended complaint (#123) is denied as to all proposed amendments except those relating to her TILA claim. I construe plaintiff's motion to appoint pro bono counsel as renewed and ask the clerk to submit a request for pro bono counsel.

IT IS SO ORDERED.

Dated this 2nd day of April, 2012.

Honorable Paul Papak
United States Magistrate Judge

OPINION AND ORDER - Page 22