IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NATACHE D. RINEGARD-GUIRMA,

                Plaintiff,                     3:10-cv-01065-PK

v.                                               OPINION AND ORDER

BANK OF AMERICA, NA,

                Defendant.

PAPAK, Magistrate Judge:

      Plaintiff Natache D. Rinegard-Guirma filed this action against defendant Bank of America, NA ("Bank of America") alleging a violation of the Truth in Lending Act ("TILA"). Now before the court are Bank of America's motion to dismiss (#186) and motion for leave to file a motion to designate plaintiff as a vexatious litigant ("motion for leave") (#212). As discussed below, the motion to dismiss and motion for leave are granted.

Page 1 - OPINION AND ORDER

## BACKGROUND

The parties are familiar with the facts of this case, and I need not repeat them in detail. At issue in the present motion is plaintiff's allegation that Litton Loan Servicing LP ("Litton"), the servicer for her loan, failed to properly respond to her June 10, 2010 request for the name, address, and telephone number of the owner of her loan. Fifth Amend. Compl., #179, ¶¶ 47-48. Plaintiff alleges that Litton was the agent of Bank of America when it failed to properly respond and that Bank of America is liable for Litton's alleged violation of TILA. *Id.* ¶¶ 50, 56.

On October 10, 2012, Bank of America filed the motion to dismiss, arguing that plaintiff's claim is "precluded by a recent opinion of the Ninth Circuit Court of Appeals"—*Gale v. First Franklin Loan Services*, 701 F.3d 1240 (9th Cir. 2012). Br. in Support of Motion to Dismiss, #187, at 2. On November 16, 2012, plaintiff filed a resistance (#196). On November 29, 2012, Bank of America filed a reply (#197). On December 20, 2012, the court stayed the motion to dismiss while the parties engaged in settlement negotiations. Minutes of Proceedings, #200. On September 3, 2013, Bank of America filed a motion, alerting the court that settlement negotiations were unsuccessful, requesting that the court rule on the pending motion to dismiss, and further requesting that, in the event the court grants the motion to dismiss, the court permit Bank of America to file a motion to designate plaintiff as a vexatious litigant before the court directs the clerk to enter judgment. On that same date, plaintiff filed a status report, confirming that the parties' settlement negotiations were unproductive and joining Bank of America's request that the court lift the stay. On September 6, 2013, the court lifted the stay. The motions are fully submitted and ready for decision.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the speculative level, "'[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" *Id.* (alterations in original) (citation omitted). Instead, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009), *citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a Rule 12(b)(6) motion to dismiss, a court must take the complaint's allegations of material fact as true and construe them in the light most favorable to the nonmoving party. *Keams v. Tempe Tech. Inst., Inc.*, 39 F.3d 222, 224 (9th Cir. 1994). Moreover, the "court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

## DISCUSSION

In support of its motion to dismiss, Bank of America argues that the court must dismiss plaintiff's TILA claim for two reasons: (1) under the Ninth Circuit's decision in *Gale*, 15 U.S.C. § 1641(f)(2) only imposes a duty to respond on servicers who are also assignees of the loan, not on servicers like Litton who are not assignees; and (2) since Litton did not violate § 1641(f)(2), Bank of America cannot be held vicariously liable for Litton's conduct under 15 U.S.C. § 1640(a). Plaintiff's three-page response brief argues that *Gale* is distinguishable and, in any case,

Page 3 - OPINION AND ORDER

policy concerns warrant holding Bank of America liable for Litton's failure to respond fully and accurately to plaintiff's inquiry.

While the Ninth Circuit in *Gale* provided the construction of 15 U.S.C. § 1641(f)(2) advanced here by Bank of America, I am concerned that *Gale*'s ultimate conclusion appears to undermine the purposes of TILA as a consumer-protection statute, negate part of Congress's 2009 amendments to TILA that were intended to provide a private right of action against lenders for all servicers' failure to respond to borrowers' inquiries about the owners of their loans, and create a gaping loophole allowing lenders to hide their identities from consumers. However, since *Gale* is currently the law of this circuit, this court must apply it and dismiss plaintiff's claim.

I do, however, briefly review the court's prior discussion of this TILA issue. In the April 2, 2012 opinion and order, the court addressed at length Bank of America's arguments that, because it was not a loan servicer, it had no obligation under § 1641(f)(2) and that it could not be held vicariously liable for a servicer's failure to adhere to § 1641(f)(2).[1] Opinion and Order, #159, at 15-21. This court implicitly accepted that Bank of America was not a servicer but disagreed that Bank of America could not be held vicariously liable for its servicer's violation of § 1641(f)(2). The court explained:

> The most articulate decision supporting [plaintiff's position that vicarious liability exists] is *Davis v. Greenpoint Mortg. Funding, Inc.*, No. 1:09-CV-2719-CC-LTW, 2011 WL 7070221, (N.D. Ga. Mar. 1, 2011), *adopted in part, rejected in part on other grounds*, 2011 WL 7070222 (N.D. Ga. Sept. 19, 2011). There, the court observed that Congress amended TILA in 2009 to create a private

---

[1] It is interesting to note that Bank of America never previously advanced the argument made possible by *Gale*—that a non-assignee servicer has no reporting obligation under § 1641(f)(2). Indeed, I have not found any court adopting that position before *Gale*, likely because of the consequences of that interpretation discussed above.

Page 4 - OPINION AND ORDER

right of action against creditors for a violation of Section 1641(f)(2). *See* 15 U.S.C. § 1640(a) (establishing liability of "any creditor who fails to comply with any requirement imposed under this part, including any requirement under . . . [Section 1641(f) or 1641(g)]"). This amendment was motivated both by Congress' general desire to provide a private right of action enforcing § 1641(f)(2) to "protect homeowners from harms associated with nondisclosures" and to allay concerns raised by an emblematic TILA case where a servicer's failure to reveal the identity of the current holder of a borrower's loan prevented the borrower from bringing a timely TILA rescission claim. *Davis*, 2011 WL 7070221, at *3. Because TILA does not contain any provisions allowing a consumer to bring a civil action against a servicer for a violation of Section 1641(f)(2), the *Davis* court observed "the private right of action that Section 1640(a) creates [against a creditor] would be meaningless, unless agency principles permit a creditor to be held liable for Section 1641(f)(2) violations committed by its servicer." *Id.* at *4. Thus, "to avoid rendering Section 1640(a) superfluous," the *Davis* court concluded that "agency principles apply, and creditors may be held vicariously liable for the Section 1641(f)(2) violations of their servicers." *Id.* (citing a similar holding in *Consumer Solutions Reo, LLC v. Hillery*, 2010 U.S. Dist. LEXIS 37857, at *9-17 (N.D. Cal. Mar. 24, 2010) where the district court applied agency principles to § 1641(f)(2), extrapolating from the decisions of other courts that have assumed TILA incorporated common law agency theory to effectuate its purpose as a remedial consumer protection statute).

On the other hand, the best example of a decision endorsing Bank of America's position is *Holcomb v. Fed. Home Loan Mortg. Corp.*, 2011 WL 5080324, at *6-7 (S.D. Fla. Oct. 26, 2011), which criticized the approach taken by *Consumer Solutions* because it conflicted with TILA's imposition of the separate duty on new creditor assignees of a loan to notify borrowers in writing of the loan's transfer. *See* 15 U.S.C. § 1641(g). The *Holcomb* court acknowledged the "disastrous effects" of a servicer's failure to disclose on a borrower's TILA rights and the "alarming" difficulties in enforcing § 1641(f)(2) without accompanying vicarious liability of creditors. *Id.* Nevertheless, the court concluded that it "cannot say that Congress intended to make creditors and assignees liable under § 1641(f)(2)" and expressed concerns that expanding liability to creditors would encourage borrowers to make "improperly motivated requests for information" and thereby "convert TILA

from a shield protecting consumers into a sword allowing them to strike lenders who have followed the statute and its regulations as closely as logic permits." *Id.* (internal quotations and citations omitted).

I find the *Davis* court's approach more persuasive. First, *Holcomb* is suspect because it completely ignores the language and effect of the 2009 TILA amendments, which bear directly on a creditor's liability under Section 1641(f). [Moreover], although only a handful of courts have addressed this issue, the trend is towards recognizing creditor liability for servicer's violations of § 1641(f). Just a few weeks ago, a soon-to-be-published Florida district court opinion grappling with this precise topic extensively examined both *Davis* and *Holcomb*, eventually following the approach taken by *Davis*. *Khan v. Bank of N.Y. Mellon*, No. 12-60128-CIV-DIMITROULEAS, — F. Supp. 2d —, 2012 WL 1003509, at *2-6 (S.D. Fla. Mar. 19, 2012) ("the Court is persuaded that Congress meant to extend agency principles to creditors or make creditors liable under § 1641(f)(2) by intentionally inserting the private right of action for violations of § 1641(f)(2) into § 1640(a), a remedy section that provides for civil liability against creditors.").[2] Although the Florida court acknowledged the difficulties of the statutory language and the dearth of interpretive authority, it emphasized the importance of construing TILA so as not to render § 1641(f)(2) "essentially without effect" as well as the remedial nature of TILA as a consumer protection statute. *Id.* at *5. Likewise, I reject Bank of America's contention that a creditor cannot be liable for [its] servicer's § 1641(f)(2) violation.

Opinion and Order, #159, at 15-18.

Given this discussion, Bank of America wisely chose not to argue in the current motion that no vicarious liability can ever attach to a creditor for a servicer's violation of § 1641(f)(2). Instead, based on *Gale*, Bank of America argues that vicarious liability is inappropriate for certain servicers—that is, those who are not assignees. To understand this argument, I must

---

[2] Following the court's April 2, 2012 opinion and order, *Khan* was published at 849 F. Supp. 2d 1377.

examine *Gale* in some detail.

In 2006, plaintiff Richard Gale refinanced his home mortgage with First Franklin Loan Services. *Gale*, 701 F.3d at 1243. Franklin served as both the creditor and servicer of Gale's loan. *Id.* In June 2008, Gale hoped to renegotiate the loan after defaulting and contacted Franklin, asking for the name and address of the holder of his loan pursuant to § 1641(f)(2). *Id.* Franklin did not respond and, in August 2008, the trust beneficiary made various transfers setting the stage for a nonjudicial foreclosure. *Id.* at 1243-44. Gale argued that Franklin violated § 1641(f)(2), which provides in relevant part: "'Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.'" *Id.* at 1244, *quoting* 15 U.S.C. § 1641(f)(2).

The Ninth Circuit admitted that Gale's construction "has surface appeal" but ultimately found that, in the context of the statute's overall scheme, it was incorrect. *Id.* Instead, the Court construed § 1641(f)(2) to impose liability for failing to respond to a borrower's inquiry "only [on] those servicers who are *also assignees* of the loan." *Id.* First, the Court noted that § 1641 as a whole addresses the liability of purchasers or assignees of mortgages, not creditors generally. *Id.* at 1244-45 (noting that each subsection of § 1641 addresses purchasers or assignees of mortgages). Moreover, the Court observed that since § 1641(f) pertains only to loan servicers who are also assignees of the loan obligation, the obligation in § 1641(f)(2) cannot apply to servicers generally.[3] *Id.* at 1245-46. Further, the Court carefully parsed the phrasing of §

---

[3] Section 1641(f), which was unchanged by the 2009 amendments to TILA, is entitled "Treatment of servicer" and provides:

Page 7 - OPINION AND ORDER

1641(f)(2), recognizing that the shift from the indefinite article—"A servicer"—in the first sentence to the definite article —"the servicer"—in the second sentence signals that the obligation contained in the second sentence applies only to the category of servicers described in the first sentence, *i.e.*, a servicer who is the nominal owner of the loan "'on the basis of an assignment of the obligation'" for "'administrative convenience.'" *Id.* at 1246, *quoting* 15 U.S.C. § 1641(f)(2) (emphasis omitted). If Congress had meant for that obligation to be applied to servicers generally, it would have used a different article, such as "a" or "any." *Id.* The Ninth Circuit therefore concluded that a servicer assigned a loan only for administrative purposes "escapes liability because it is only a nominal owner of the note, but must still respond to an obligor seeking information as to the true owner of the note." *Id.* Because Franklin was the

---

> (1) In general
>
> A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.
>
> (2) Servicer not treated as owner on basis of assignment for administrative convenience
>
> A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.

15 U.S.C. § 1641(f) (emphasis omitted).

original creditor, not an assignee, the Ninth Circuit held that it had no obligation to provide notice under § 1641(f)(2). *Id.*

The Ninth Circuit's construction of § 1641(f) in *Gale* effectively creates three categories of servicers. First, there are the servicer-assignees who own the loan obligation. Such servicers are obligated to respond under § 1641(f)(2) and can be held liable for failure to do so. Second, there are the servicer-assignees who are only nominal owners of the obligation for administrative convenience. These servicers have a duty to respond under § 1641(f)(2) but there exists no right of action to enforce that obligation. Third, there are servicers who are not assignees, either substantively or nominally. These servicers have no duty under § 1641(f)(2) to respond to a borrower's request for information, nor can they be held liable for failing to respond.

The Ninth Circuit made clear that it reached its decision in *Gale* only on the basis of the pre-amendment statute, since Gale submitted his request for information (and therefore his action accrued) in mid-2008, prior to the 2009 amendments. *Id.* at 1247. Nevertheless, in dicta, the Ninth Circuit briefly observed that the 2009 amendments also supported its construction of § 1641(f)(2).[4] *Id.* The 2009 amendments made two changes to TILA relevant to this issue. *See* Pub. L. No. 111–22, 123 Stat. 1632, 1658 (2009). Congress changed 15 U.S.C. § 1640(a) to create a private right of action against any creditor "who fails to comply with . . . subsection (f) or (g)" of § 1641—the provisions requiring servicers to respond to requests for the identity of the loan holder and requiring new creditors to notify borrowers of loan transfers or assignments. *Id.* Congress also added § 1641(g), requiring a creditor that is the "new owner or assignee of the

---

[4] The Ninth Circuit's original opinion in the case, 686 F.3d 1055, omitted this discussion of the 2009 amendments. The Court later withdrew that opinion and replaced it with the amended version, 701 F.3d 1240, which is the focus of the present motion.

Page 9 - OPINION AND ORDER

debt" to notify the borrower of the transfer and provide the creditor's contact information and other details of the transfer. *Id.*

As the Ninth Circuit recognized in *Gale*, § 1641(g) conflicted with TILA's existing definition of "creditor," which was limited to the entity to whom the debt was originally payable, leading the Ninth Circuit to observe that the existing definition "is no longer valid" even though it was never amended or removed. *Gale*, 701 F.3d at 1246-47. Reflecting on these changes, the Ninth Circuit stated: "Given this broader definition [of creditor] which includes assignees, it makes perfect sense for Congress to refer in § 1640(a) to § 1641 provisions whose effect is limited to assignees." *Id.* at 1247. It is not entirely clear what the Ninth Circuit meant by this, but one could read that sentence to reveal the Ninth Circuit's belief that the 2009 amendment to § 1640(a) creates a private right of action for a violation of § 1641(f)(2) only against assignee creditors who are also servicers. But that would mean the amendment to § 1640(a) has no practical effect. An assignee creditor that also services its own loan would be required to notify the borrower of its identity upon receiving assignment of the loan under § 1641(g), presumably eliminating the need for the borrower to later request the identity of the creditor/servicer at some later date.

The Ninth Circuit's reasoning in *Gale* concerning § 1641(f)(2) is plausible in the context of the pre-amendment statute. If Congress had intended to create an obligation for all servicers to respond to borrower inquiries, it should have placed that obligation outside of § 1641, which expressly concerns "Liability of assignees." *See* 15 U.S.C. § 1641. The context of § 1641(f)(2) and its language indicate an intent to limit the reporting obligation to servicer-assignees. But the Ninth Circuit's construction conflicts with Congress's understanding of the effect of pre-

Page 10 - OPINION AND ORDER

amendment § 1641(f)(2) and with Congress's intent concerning the purpose and impact of the 2009 amendments. And the impact of *Gale* has disastrous consequences for the enforcement of the § 1641(f)(2) reporting obligation—the very problem Congress attempted to fix.

As courts have recognized, Congress amended TILA in 2009 as "a reaction to the continuing concern that, lacking a private right of action, Section 1641(f)(2) had failed to protect homeowners from harms associated with nondisclosures." *Davis*, 2011 WL 7070221, at *3. The sponsor of the 2009 amendments, Senator Barbara Boxer of California, introduced the need for the amendment creating a private right of action to enforce § 1641(f)(2) this way:

> It seems like common sense if you have a mortgage on your home, you ought to know who holds the mortgage. But in today's real estate market, where the original lender often sells the loan to another entity, you can lose track and not know who actually owns your mortgage. . . .
>
> . . . .
>
> And Federal law does require that the servicer tell the homeowner the [identity] of the person holding their mortgage.
>
> But servicers routinely ignore requests from homeowners for information on the noteholder. . . .
>
> While servicers are required to disclose this information, there are no penalties in the law for noncompliance and no remedies for a homeowner faced with a recalcitrant servicer.

155 Cong. Rec. S5098 (daily ed. May 5, 2009). Senator Boxer's comments indicate Congress's and others' understanding that § 1641(f)(2) already required all servicers to tell borrowers the name of the loan holder, even if it did not create a right of action to challenge a servicer's failure to adhere to that duty. *See also* 155 Cong. Rec. S5174 (daily ed. May 6, 2009) (letter to Senate Banking Committee Chairman Christopher Dodd from several consumer-advocacy groups

Page 11 - OPINION AND ORDER

recognizing that "federal law requires that servicers tell the homeowner the identity of the note holder" but noting that "this provision—15 U.S.C. [§] 1641(f)(2)—has completely failed to protect homeowners because there is no private right of action"). Courts prior to *Gale* also interpreted § 1641(f)(2) similarly. *See, e.g., Davis*, 2011 WL 7070221, at *4 ("By its plain language, 15 U.S.C. § 1641(f)(2) imposes a disclosure obligation that is directed to servicers only."); *Holcomb*, 2011 WL 5080324, at *6 ("TILA presents an apparent conundrum by imposing an obligation on servicers to provide information on request but also absolving servicers of any liability under TILA where the servicers are not also the owners of the obligations."). Of course, *Gale*'s holding contradicts that widely held understanding.

More significant is the impact of *Gale* on the efficacy of the 2009 amendments themselves. The language of the 2009 amendment creating the private right of action is already vague. Section 1640(a) now provides that a creditor "who fails to comply with . . . subsection (f) or (g)" of § 1641 "is liable" for actual damages and other statutory damages. How, then, does a creditor "fail to comply" with § 1641(f)(2) if that obligation only applies to servicers? Courts have suggested that the amendment to § 1640(a) would be meaningless unless "agency principles permit a creditor to be held liable for Section 1641(f)(2) violations committed by its servicer." *Davis*, 2011 WL 7070221, at *4; *accord Khan*, 849 F. Supp. 2d at 1382 ("[T]he Court is persuaded that Congress meant to extend agency principles to creditors or make creditors liable under § 1641(f)(2) by intentionally inserting the private right of action for violations of § 1641(f)(2) into § 1640(a), a remedy section that provides for civil liability against creditors."); *Kissinger v. Wells Fargo Bank, N.A.*, 888 F. Supp. 2d 1309, 1315 (S.D. Fla. 2012) ("There is no question that Congress created a cause of action as set forth in 15 U.S.C. § 1640(a). At the same

Page 12 - OPINION AND ORDER

time, Congress mandated that servicers would not be liable for a TILA violation. 15 U.S.C. § 1641(f). As such, the Court concludes that Congress intended the servicer's agent to be liable; otherwise, Congress created a cause of action with no one to sue for relief.").

But for that vicarious-liability theory to serve as the legal mechanism underlying the private right of action Congress meant to create, a servicer must commit some underlying violation of TILA that may be imputed to its principal, the creditor. And under *Gale*, unless the servicer is also an assignee (whether actually or only nominally for administrative purposes), there is no obligation to respond under § 1641(f)(2). Here, plaintiff does not allege that the servicer, Litton, is an assignee of her loan obligation. Thus, as Bank of America points out in its brief, "it is logically impossible for Bank of America . . . to be held vicariously liable under TILA for a violation of TILA supposedly committed by Litton" because, according to *Gale*, § 1641(f)(2) placed no obligation on Litton to respond to plaintiff's request. Br. in Support of Motion to Dismiss, #187, at 7 (citing Oregon and federal case law holding that a principal cannot be vicariously liable if its agent committed no statutory violation). Therefore, the ultimate effect of *Gale* is to create a wide loophole to escape the clear intent of Congress's amendment to § 1640(a). Creditors need only contract with servicers *without assigning the underlying obligation* to the servicer. The servicer then will not be obligated to respond to the borrower's request for information, and no one—not even the creditor—can be held liable.

In order to avoid vitiating Congress's obvious intent in enacting the 2009 amendments, at least two courts have limited the applicability of *Gale* to only pre-amendment cases. *Montano v. Wells Fargo Bank N.A.*, No. 12-80718-CIV, 2012 WL 5233653, at *3 (S.D. Fla. Oct. 23, 2012); *Galeano v. Fed. Home Loan Mortg. Corp.*, No. 12-61174-CIV., 2012 WL 3613890, at *4 (S.D.

Page 13 - OPINION AND ORDER

Fla. Aug. 21, 2012). *Montano* featured facts very similar to this case. The plaintiff's home loan was assigned to Wells Fargo, which employed Carrington Mortgage Services, LLC to service the loan. *Montano*, 2012 WL 5233653, at *1. The plaintiff requested that Carrington identify the owner or master servicer of his loan, and Carrington failed to provide the address or telephone number of that entity, so the plaintiff brought a claim under § 1641(f)(2) and § 1640(a) against Wells Fargo. *Id.* Citing *Gale*, Wells Fargo argued that the duty to provide notice under § 1641(f)(2) applies only to servicer-assignees and that the plaintiff did not allege that Carrington was a servicer-assignee of the loan. *Id.* at *2. But, since the plaintiff made his TILA request after the 2009 amendments, the court refused to apply *Gale*.[5] *Id.* at *3 ("If Congress intended § 1641(f)(2)'s disclosure obligation to apply only to assignee-servicers who were not 'creditors,' which TILA defines in § 1602(f) as the original lenders only, Congress would not have added in 2009 the specific statutory reference to a private right of action against creditors who violate § 1641(f)(2).").

On the one hand, it is tempting to take the same approach as *Montano*, essentially recognizing that *Gale*'s holding was limited to pre-amendment cases and finding that its discussion of the 2009 amendments was dicta. *See United States v. Matta-Ballesteros*, 71 F.3d 754, 772-73 (9th Cir. 1995) (stating that dicta is "not the holding of the court . . . [and] do[es] not operate as binding decisional precedent"). At the same time, since only the context—but not the actual language—of § 1641(f)(2) was altered by the 2009 amendments, it is less defensible to assert that the Ninth Circuit's construal of § 1641(f)(2) is nonbinding.

---

[5] Of course, even if the *Montano* court determined that *Gale*'s rational applied equally to post-amendment cases, it was under no obligation to follow *Gale*, an out-of-circuit decision.

Accordingly, in light of my finding that *Gale* applies to this case and because this court is bound by Ninth Circuit precedent, I find that Litton, a non-assignee servicer, had no duty under § 1641(f)(2) to respond to plaintiff's inquiry. Without an underlying violation, Bank of America cannot be held liable and plaintiff's TILA claim cannot survive.

## CONCLUSION

For the reasons discussed above, Bank of America's motion to dismiss (#186) is granted. In light of the disposition of this case, I also grant Bank of America's motion for leave to file a motion to designate plaintiff as a vexatious litigant (#212) and will consider the merits of such motion when and if it is filed. If Bank of America wishes to file such a motion, it must do so within fourteen days of the date of this opinion and order. If Bank of America does not file such a motion, or after resolution of such motion, the clerk of court is directed to dismiss this case with prejudice and without leave to amend.

Dated this 1st day of November, 2013.

_____
Honorable Paul Papak
United States Magistrate Judge